# CHARLESTON.

JENNIE K. PENCE v. W. A. JAMISON *et als.*

Submitted September 25, 1917.   Decided October 2, 1917.

1. ACKNOWLEDGMENT—*Qualification—Agency for Borrower.*
    One who acts as agent of the borrower in procuring a loan, and is paid for his services out of the money so procured, is not disqualified to take the acknowledgment of the borrower to a deed of trust given to secure such loan.  (p. 764).

2. MORTGAGES—*Sale—Validity—Trustee's Agency for Creditor.*
    A sale by a trustee who is the agent or attorney of the creditor secured by the deed of trust under which such sale is made, will not be set aside for that reason alone, but his acts in the execution of the trust will be closely scrutinized with a view to seeing that he has performed his duties with entire impartiality.  (p. 765).

3. SAME—*Deed of Trust—Validity—Consideration.*
    A deed of trust made to secure promissory notes or other evidences of debt which are intended to be negotiated or assigned and transferred by the grantor to third persons is valid, although no money passes at the time of its execution; the consideration subsequently furnished by the purchaser of the notes will relate back and sustain the deed of trust.  (p. 766).

4. SAME—*Deed of Trust—Advertisement of Sale.*
    An advertisement for sale by a trustee of a town lot, upon which there is a house, which describes such lot by metes and bounds, and gives the number of the lot upon the town plat, and the deed book and page where such plat is recorded, is sufficient without stating that there is a building upon such lot and the character thereof.  (p. 767).

5. SAME—*Trust Deed—Sale—Payment of Proceeds.*
    Where a deed of trust provides that any sale made thereunder shall be for cash sufficient to pay the debt secured and upon time as to the residue, and the property is advertised by the trustee to

be sold upon such terms, a sale made by the trustee under such advertisement for cash will not be set aside where it appears that the purchaser at such sale desired to pay the entire purchase money on the day of sale, and the grantor in the deed of trust assented thereto. (p. 768).

6. SAME—*Trust Deed—Sale—Validity.*

A sale made by a trustee under a deed of trust will not be set aside because the trustee refused to continue such sale at the request of the debtor, upon the representation that negotiations were pending to procure the money to discharge the lien of the deed of trust, where similar representations theretofore repeatedly made by such debtor had been barren of results. (p. 769).

7. SAME—*Trust Deed—Sale—Deed.*

A sale of real estate under a deed of trust will not be set aside because a trustee in a subsequent deed of trust covering the same real estate advertised it for sale at the same time and joined the first trustee in such sale and in the deed conveying the same to the purchaser. The sale and conveyance made by the trustee in the first deed of trust left nothing to be sold or conveyed by said second trustee, and his joining in such sale and the deed made in pursuance thereof in nowise affected its validity. (p. 770).

8. SAME—*Trust Deed—Duty of Trustee.*

A trustee in a deed of trust is under no duty to seek the aid of a court of equity in the administration of the trust unless it appear that there are prior liens of uncertain amount or whose validity has not been determined, or some other equity which would render uncertain the title of a purchaser at a sale made by such trustee. (p. 771).

9. SAME—*Trust Deed—Validity of Sale—Inadequacy of Price.*

A sale of real estate by a trustee will not be set aside upon the ground of inadequacy of price unless such inadequacy is so great as to shock the conscience of the chancellor. Such a sale will not be disturbed where the price realized is approximately three-fourths of the estimated value of the property. (p. 772).

Appeal from Circuit Court, Mercer County.

Suit by Jennie K. Pence against W. A. Jamison and others to set aside a sale under a deed of trust. Decree for Jamison, and plaintiff appeals.

*Affirmed.*

*Samuel W. Williams,* for appellant.

*Sanders & Crockett* and *L. J. Holland,* for appellee.

Ritz, Judge:

The plaintiff needing the sum of three thousand dollars for the purpose of completing a building on a lot owned by her in the town of Bramwell, applied to the defendant L. J. Holland to secure a loan of that amount for her. For his services she agreed to pay him five per cent. of the amount desired, or one hundred and fifty dollars. The defendants Kirkpatrick & Howard, of Lynchburg, Virginia, were applied to by Holland, and they secured the money from one of their clients, Holland dividing the fee of one hundred and fifty dollars with them. The plaintiff executed a deed of trust dated the 4th day of August, 1911, to secure this loan which was divided into three bonds: one for five hundred dollars, due at one year from date; one for one thousand dollars, due at two years from date; and one for fifteen hundred dollars, due at three years from date. The money, less the one hundred and fifty dollars agreed to be paid to Holland, was duly paid over to the plaintiff, and the bonds were delivered to a man by the name of Hutter who furnished the money. When the building was completed plaintiff found that she did not have enough money to pay for the materials and labor which had been used in the same, and to secure this remaining indebtedness she executed a deed of trust, on the 27th day of January, 1912, conveying the property to L. J. Holland, trustee. It appears that when the first bond of five hundred dollars became due it was not paid, but arrangements were made to carry it, and the interest was paid thereon. When the second bond of one thousand dollars fell due it was not paid, but like arrangements were made to carry it, together with the first five hundred dollar bond, until the last one of fifteen hundred dollars became due, making the whole three thousand dollars fall due at the same time, to-wit, on the 4th day of August, 1914. When this time arrived the plaintiff was still unable to pay the debt and after considerable negotiation the time of payment was extended six months, to-wit, until the 4th day of February, 1915. She did not then pay the debt, and after considerable correspondence and negotiation between her and Kirkpatrick & Howard they, on the 16th day of March, 1915, advertised the property to be sold on the

16th day of April, 1915. The creditors secured under the deed of trust to L. J. Holland, above referred to, had not been paid, and upon their demand Holland also advertised the property for sale under that deed of trust, said sale to be made on said 16th day of April, 1915. The defendant F. S. Kirkpatrick, one of the trustees in the deed of trust to secure the three thousand dollars, and L. J. Holland, trustee in the other deed of trust, went to Bramwell on the 16th day of April, 1915, and made sale of the property, at which sale the defendant W. A. Jamison became the purchaser for the sum of fifty-six hundred dollars, which sum was paid in cash and the property conveyed to him by said trustees on that day. This suit was then instituted by plaintiff for the purpose of setting aside said sale.

The first ground assigned for setting aside the sale is that L. J. Holland, who took the acknowledgment to the deed of trust executed by plaintiff and her husband to Kirkpatrick & Howard, trustees, to secure the three thousand dollar debt, was so interested because he received the sum of one hundred and fifty dolars for procuring this loan, that the acknowledgment taken by him was void, and the acknowledgment being void, and she being a married woman, the deed executed by her was void. Many authorities are cited to the effect that neither the grantee in a deed of trust nor the creditor secured thereby is competent to take the acknowledgment, and also that one interested in the transaction is likewise incompetent. But it is contended by the defendant that Holland had no such interest. The only connection that he had with this transaction, so far as the record discloses, is that at the plaintiff's solicitation he procured this loan for her, for which he was paid the sum of one hundred and fifty dollars, which sum he divided with Kirkpatrick & Howard who assisted him in securing the money for the plaintiff. It does not appear that he was in any wise interested in the bonds executed by Mrs. Pence, or in her real estate. It will make no difference to him from a pecuniary point of view whether the deed of trust is upheld, or whether it is overthrown. Manifestly the sort of interest referred to by the authorities is one that would be affected by the deed of trust, that is, such an in-

terest as would make Holland's pecuniary position different should the deed of trust be overthrown from what it would be should the deed of trust be upheld. This position is clearly supported by the authorities. *Nixon* v. *Post,* 13 Wash. 181; *Vizard* v. *Robinson* (Ala.) 61 Sou. 959; *Scott* v. *Thomas,* 104 Va. 330; *Joines* v. *Johnson,* 133 N. C. 487; *Mudra* v. *Groeling,* 89 Neb. 829; *Gilbert* v. *Garber,* 69 Neb. 419; *Nicholson* v. *Gloucester Charity School,* (Va.) 24 S. E. 899; *Bardsley* v. *German-American Bank,* 113 Iowa, 216.

In 1 Corp. Jur. 804, referring to the disqualification of an officer to take an acknowledgment because of interest, it is said: "In order to disqualify an officer he must have a direct pecuniary interest in the consideration for the instrument, or in upholding such instrument after it is executed." This, we think, is the true test to be applied in such cases. Holland had no such interest.

The next reason assigned for setting aside the sale is that Kirkpatrick & Howard, who were trustees in the deed of trust given to secure the three thousand dollar debt, were interested parties. It is charged that in fact they were the beneficiaries in the deed of trust, and if not the beneficiaries that they were so connected with the beneficiary as to make any sale made by them under the deed of trust void. A careful review of the evidence discloses the facts, in so far as they affect the interest of Kirkpatrick & Howard, to be that they are attorneys-at-law residing in the city of Lynchburg, Virginia, and that they secure loans of money for parties desiring the same from clients of theirs having money to invest; that on this occasion they secured this three thousand dollar loan for the plaintiff from a client of theirs by the name of Hutter; that the bonds were turned over to Hutter and the money received from him and turned over to the plaintiff; that at the expiration of the three years Hutter would carry the loan no longer; that the plaintiff was unable to pay the same at that time, and Kirkpatrick & Howard, having some funds of other clients to invest, took up these bonds from Hutter with such funds, and gave Mrs. Pence a further extension of time; that after these bonds had been so held for sometime they were again negotiated through the defendants

Kirkpatrick & Howard with another client of theirs having money to loan by the name of Miss Howard, and were held by her at the time of the sale. It does not appear that Kirkpatrick & Howard at any time had any pecuniary interest in the loan. It is also shown by the evidence of Kirkpatrick that they received nothing from the parties from whom they secured the funds, but that all the compensation received by them was paid by the plaintiff. If Kirkpatrick & Howard, or either of them, were the beneficiaries in this deed of trust, it would be improper for them to execute the same, but does the fact that they were the agents or attorneys for the parties from whom the money was secured make the sale made by them invalid? This deed of trust was not executed to Kirkpatrick & Howard in their capacity as agents or attorneys for the holders of the bonds. The fact that they occupied this relation to such holders does not of itself incapacitate them from accepting the trust. Such fact would lead to close scrutiny of their acts under the deed of trust, but it could afford no reason for holding their acts thereunder void. The fact that they occupied such dual relation would require them, in the discharge of the trust, to act in the utmost good faith, and unless it be shown that they have acted otherwise the existence of such relationship will not of itself overthrow the sale. *Copelan* v. *Sohn,* 75 W. Va. 83; *Clark* v. *Eaton,* 100 U. S. 149; *Goddin* v. *Vaughn,* 14 Gratt. 102.

Plaintiff also contends that the deed of trust is void for want of consideration and for want of mutuality. We are at a loss to understand the basis for this claim. She avers in her bill that she executed the three bonds; that she executed the deed of trust to secure the payment thereof; and that she received the money for the bonds. Certainly the receipt of the money is sufficient consideration for the transfer of the bonds. The fact that the bonds and the deed of trust were executed before the money was paid over to the plaintiff can make no difference. The transaction was not completed until the delivery of the bonds and the deed of trust and the receipt of the money, and when these bonds were delivered and the money paid they became valid and binding obligations of the plaintiff. The same is true of the deed of trust.

The doctrine applicable to the state of facts existing here is aptly stated in 27 Cyc. p. 1054, as follows: ''A mortgage made to secure promissory notes or other evidences of debt, which are intended to be negotiated or assigned and transferred by the mortgagee to third persons, is valid, although no money passes at the time of its execution; consideration subsequently furnished by the purchasers of the notes will relate back and sustain the mortgage.''

It is further contended that the sale is void and should be set aside because the trustees failed to advertise the property in accordance with the terms of the deeds of trust. The objection is made to the advertisements that they do not sufficiently describe the buildings located upon the real estate, and to the advertisement made by Holland, trustee, that it does not correctly state the terms of sale. The advertisement of Kirkpatrick & Howard, trustees, describes the property by metes and bounds, gives the number of the lot upon the plat of the town of Bramwell, and reference to the deed book and the page in which the same is recorded; and the only point made against this is that it should have stated that there was a building on the lot and the character of such building. The same criticism is made of the advertisement under the Holland deed of trust. We do not think there is merit in this contention. Both of the advertisements clearly and explicitly inform prospective purchasers what real estate would be sold, and by an examination of the same the purchaser would have observed the house on the lot and the character of it. But it is asserted that the trustees had some sinister purpose in not indicating in the advertisement that there was a house upon the premises, and the character of the house. We do not think such an inference can be drawn from this fact, but even if it could it is overthrown by the proof that the trustees prepared large posters and had them put up at numerous places in the locality, fully informing prospective bidders of the property to be sold, the character of the house theron, and giving other information having a tendency to convey the idea that it was an attractive and desirable piece of property. The fact that the advertisement under the Holland deed of trust did not follow the terms of sale stated in the

deed of trust is not material. The sale which was made was a sale under the deed of trust to Kirkpatrick & Howard. The only interest that was conveyed by the Holland deed of trust was the equity of redemption remaining after the satisfaction of the lien of the other deed of trust. The only effect that the advertisement of the property for sale under the deed of trust executed to Holland at the same time that the sale was to be made under the other deed of trust would be to secure whatever surplus might remain after the satisfaction of the other debt, and have it applied to the discharge of the lien of the Holland deed of trust. After the first deed of trust was executed the title, both legal and equitable, was gone and went into the purchaser at the trustee's sale, and there was no real estate for Holland to sell.

It is objected that this sale was in fact made for cash when, according to the terms of the deed of trust and the advertisement thereunder, it was to have been made for sufficient cash to pay off the debts secured by the deed of trust, and on time as to the balance. This is fully explained by the evidence. It appears that after the sale had begun one of the bidders inquired of the trustee, Kirkpatrick, if all of the purchase money might be paid in cash, provided he became the purchaser at such sale; that the sale was suspended for a sufficient time for Mr. Kirkpatrick to communicate with Mrs. Pence who was in the building, in front of which the sale was being made, and she agreed that any purchaser who desired might pay all of the purchase money in cash instead of paying in accordance with the terms advertised; and it was because of this agreement that the purchaser was allowed to pay the entire purchase money on the day of sale and receive a deed for the property. The plaintiff does not deny that she assented to this arrangement, and she cannot claim that she was prejudiced thereby for the reason that the purchaser was under no obligation to pay cash on the day of sale. He was only permitted to do so in case he preferred to close the sale in that way, so that it cannot be said that the property brought any less money, for any purchaser who desired to pay more for it on the terms prescribed in the

deed of trust had a perfect right to do so, and to purchase on those terms.

Another contention made by the plaintiff is that this was a joint sale made by Kirkpatrick & Howard under the deed of trust executed to them, and by Holland, trustee, under the deed of trust executed to him. It is true that the property was advertised for sale under both of these deeds of trust, the Holland sale advertised to take place thirty minutes after the sale under the Kirkpatrick & Howard deed. What we have already said sufficiently shows the only effect that could arise from the advertisement under the Holland deed of trust. All of the interest in the real estate, both legal and equitable, passed to the purchaser upon the foreclosure of the Kirkpatrick & Howard trust deed, and the fact that Holland joined in the sale, and joined in the deed from the purchaser, added nothing to it, and would, perhaps, have no other effect than to indicate that the deed of trust in which he was trustee had been executed as to the surplus; otherwise it might have been necessary for the beneficiaries therein to go into a court of equity and enjoin the trustees Kirkpatrick & Howard from paying over the surplus to Mrs. Pence, and have the application thereof directed to the satisfaction of their lien. The case of *Shears* v. *Traders Building Association,* 58 W. Va. 665, is relied upon by the plaintiff to support her contention that this sale was void. In that case the same creditor had two debts against the same debtor, one debt secured by a deed of trust on one piece of property, and the other debt secured by a deed of trust on another piece of property. These deeds of trust were foreclosed and the two pieces of property sold jointly, and the fund thus arising applied to the discharge of the total of the two debts. The court simply held in that case that inasmuch as the security of each of the pieces of property was for the particular debt, that the property must be sold in such way as to see that no part of the security for one of the debts was applied to the payment of the other. It might be that one of the properties would not bring the secured debt, and that the other would bring in excess of the debt secured by it, but the combined proceeds

amounted to sufficient to pay the combined debts. In an event like this the effect of selling the two properties together was to have the deficiency in one security made up out of any excess that there might be of the other security. Such a state of facts does not exist here, and that authority is without application.

It is also contended that Kirkpatrick, the trustee who acted in the execution of the deed of trust made to himself and Howard, was guilty of improper conduct, that he did not act impartially between the parties. It is insisted that he was harsh with the plaintiff in communicating with her on numbers of occasions, and it is particularly charged against him that it was wrong for him to refuse to continue the sale and give the plaintiff further time within which to raise the money. A large amount of correspondence is introduced into the record with the deposition of Kirkpatrick, and from this correspondence his disposition toward the plaintiff clearly appears. This correspondence indicates that he, at Mrs. Pence's solicitation, procured an extension of time for the payment of this debt from August 4th to February 4th. He advised her at that time that he would not be able to procure any further extension of time; that the parties holding the debt would insist on having their money on the 4th of February, and he urged her to make arrangements at once so that when the day of reckoning arrived there would be no question about her being able to pay off the debt. She wrote him on more than one occasion advising him that she had her arrangements made to secure the money at the time it was due, but suggesting that she would like to have him secure a further extension of time for the payment of the loan. To these letters he replied that the holders of the debt were insistent that their money should be paid on the 4th of February, and urged her not to wait until that time to secure the money. When the fourth of February arrived the bonds were not paid. He wrote her then that the holders of the bonds were demanding that he advertise the property for sale, and that he would have to do so unless they were promptly liquidated. The plaintiff advised him that she had

arrangements made to take up the debt; that a party who was well able to loan her the money had agreed to do so, but that he was absent and would not be back for a few days, and urged Mr. Kirkpatrick to wait until the return of this party. Mr. Kirkpatrick did this, and when the time was up wrote her again calling her attention to the fact that she had not paid the money at the time she had indicated, and that he would have to advertise the property unless payment was immediately made. He was then advised that she had not succeeded in securing the money from the party she at first had in mind, but that she had arranged to get it from another party in a short time; but this arrangement did not material-ize, and after waiting until the 16th of March the property was advertised for sale, and the sale made on the 16th of April. A perusal of these letters will show that the plaintiff had made repeated statements to Mr. Kirkpatrick to the effect that she had arrangements made for this money, and that these arrangements all proved abortive. The corres-pondence shows that Kirkpatrick called her attention to the necessity for arranging for the payment of this money quite awhile before the 4th of February; that he advised her that the parties who held the bonds did not desire to foreclose under the deed of trust, but that their circumstances were such that they could not longer indulge her. We think that instead of showing any bad faith on the part of Kirkpatrick, or any design on his part to make an unexpected sale of the plaintiff's property, he did very much more than the ordinary trustee does in calling her attention to the necessity for tak-ing care of her debt when it became due. Nor can we say that he acted in bad faith in refusing to continue the sale on the 16th of April upon her statement that she had expec-tations of borrowing this money from other people, in view of the fact that she had repeatedly made similar statements to him prior to that time, none of which materialized.

It is also contended that the trustee before making sale should have filed a bill in equity and had the liens against this property ascertained. There is no duty upon the trustee under a deed of trust to invoke the aid of a court of equity

in the execution of his trust, unless there are prior liens, the amount of which is indefinite and uncertain, or unless there is some other equity intervening which would likely cause the property to sell at a sacrifice. Not only is there no such duty upon the trustee, but a court of equity will not lend its aid unless there is necessity therefor. *Copelan* v. *Sohn*, 75 W. Va. 83. It is not intimated that there is any lien on this property superior to the lien of the deed of trust executed to Kirkpatrick & Howard, nor is it intimated that there is any lien thereon superior to the deed of trust executed to Holland, except the Kirkpatrick & Howard deed of trust. The amount of both of these debts was certain, definite, and well known to all the parties, so that it cannot be said that the price paid for this property was in any way affected by reason of the existence of prior encumbrances thereon, the amount or extent of which was uncertain. It is true, it is contended by Lottie G. Smith, a daughter of the plaintiff, that she loaned her mother a considerable sum of money at the time she built this house, but she does not contend, nor does it anywhere appear in the record, that she has any lien upon the property to secure this advancement.

Complaint is made that the price paid for this property is so grossly inadequate that the sale should be set aside for that reason. It is quite true that when the price paid for property at a trustee's sale is so grossly inadequate as to shock the conscience of a chancellor, it will be set aside; and it is likewise true that where such inadequacy is accompanied by improper conduct or bad faith upon the part of the trustee, the sale will be more closely scrutinized than if inadequacy of price alone were relied upon. But we find nothing in this case indicating unfairness or bad faith or improper conduct on the part of the trustees which can be said to have contributed to the inadequacy of price, if there be such. The plaintiff and two of her daughters testify that the property is worth twenty thousand dollars. There is scarcely any corroboration of this statement. The great preponderance of the evidence of those well acquainted with the property, and with the value of property in that neighborhood, both from

witnesses introduced by the plaintiff and the defendant, is that the property is worth from seven to eight thousand dollars, and we conclude from the evidence that this is the fair value of the property. In *Lallance* v. *Fisher,* 29 W. Va. 512, it was held that a sale otherwise free from fraud or bad faith would not be set aside because of inadequacy of price where the property brought only one-half of the estimated value thereof. *Copelan* v. *Sohn,* 75 W. Va. 83, is to the same effect. In this case the property brought very much more than one-half of the estimated value.

We find no error in the decree complained of and the same is affirmed.

*Affirmed.*