433 S.E.2d 528

Aurelio BENAVIDES and Cindy E. Benavides, Plaintiffs Below, Appellees,

v.

SHENANDOAH FEDERAL SAVINGS BANK and Guy R. Athev, Jr., Defendants Below, Appellees,

and

Luz Dolly Benavides, Defendant Below, Appellant.

No. 20928.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided July 16, 1993.

Charles F. Printz, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, for Aurelio Benavides and Cindy E. Benavides.

James I. Manion, Jackson & Kelly, Martinsburg, for Shenandoah Federal Sav. Bank and Guy R. Athey, Jr.

Sally G. Jackson, Crawford & Jackson, Charles Town, for Luz Dolly Benavides.

PER CURIAM:

This is an appeal by Luz Dolly Benavides from a September 23, 1991, order of the Circuit Court of Berkeley County ruling that a $65,000 sale price on the marital home owned by the Appellant and her former husband was not so grossly inadequate as to shock the conscience of the Court. The Appellant has requested this Court to order that the property be sold for the Appellant's upset bid of $75,000 or be resold at a public sale. We find that the lower court committed no reversible error and affirm.

## I.

Married in Bogota, Columbia, on August 13, 1969, the Appellant and her former husband, Aurelio Benavides, were divorced on July 15, 1980.[1] The Appellant was granted custody of the parties' two children, Ivan, born October 7, 1971, and Diego, born July 9, 1973. Aurelio Benavides, a neurologist, was ordered to pay alimony and child support. The residence in question, purchased in 1976 for $60,000, was to be occupied by the Appellant during the infancy of the children or until the Appellant remarried.

The Appellant has not remarried, has continued to reside in the marital home, and has made all mortgage payments on the home. The older child continues to reside with his mother and attends Shepherd College in Shepherdstown, West Virginia. By order dated August 15, 1989, custody of the younger child was transferred to Dr. Benavides. Although the parties apparently agreed to list the property through a realtor, they were unsuccessful, and the listing expired on May 9, 1990. On December 7, 1990, Dr. Benavides initiated a partition suit to compel the sale of the former marital residence. The Appellant joined in that action and agreed to the public sale held on June 21, 1991. The Appellant and her counsel were present at the sale, yet no bid was made by the Appellant at that time. Dr. Benavides, through

---

1. Appellee Aurelio Benavides has remarried, and his wife, Cindy E. Benavides, is also a party to this action.

an agent, submitted the highest bid of $65,-000, and the property was sold to him for that price. On September 4, 1991, prior to the lower court's approval of the sale, the Appellant submitted an upset bid of $75,-000. On September 23, 1991, the lower court confirmed the sale to Dr. Benavides for $65,000 and found that the $65,000 sale price was not grossly inadequate.

The Appellant contends that acceptance of $65,000 bid was inappropriate and shocking to the conscience where the home had been appraised for 136,500 and had been the subject of a real estate contract for $138,000 as recently as January 22, 1990.[2]

## II.

■ We have adopted the principle that a judicial sale will not be set aside for mere inadequacy of price unless that inadequacy is so great as to shock the conscience of the court or to raise a presumption of fraud. *Koay v. Koay,* 178 W.Va. 280, 283, 359 S.E.2d 113, 116 (1987). We explained the following in *Koay:*

> A partition sale is a forced sale, and for that reason courts have been hesitant to find that a bid substantially below an appraised value or an arm's length transaction value is so grossly inadequate to shock the conscience. Bids often amounting to only 50% or less of the appraised or arm's length value have been upheld.

*Id.*

■ Furthermore, we have held that where a public sale was fairly conducted, "the matter of receiving upset bids has always been left to the discretion of the trial court, the discretion being reviewable, and the rule favors the receiving of such bids upon reasonable showing that the original sale price was inadequate." *State v. Hatfield,* 136 W.Va. 342, 346, 67 S.E.2d 529, 531 (1951); *see also Old Nat'l Bank of Martinsburg v. Hendricks,* 181 W.Va. 537, 383 S.E.2d 502 (1989); *State v. Murphy,* 109 W.Va. 102, 153 S.E. 149 (1930). As we explained in syllabus point 2 of *Hatfield,*

"[w]hether a sale of land shall be confirmed or the property again offered for sale, upon the filing of an upset bid, depends upon circumstances of the particular case, and the action of the trial court thereon will not be disturbed on appeal unless plainly wrong." We further explained in *Hatfield* that "[t]here is no authority, however, and in reason should be none, requiring a reopening of the bidding merely upon the receipt of an upset bid of ten per cent above the previous purchase price." 136 W.Va. at 346, 67 S.E.2d at 531.

In *Hatfield,* as in the present case, the individuals placing the upset bid had been present at the sale but had failed to bid during the sale. *Id.* at 347, 67 S.E.2d at 532. The contention was made in *Hatfield* that the upset bid should have been refused based upon the presence of those individuals at the sale and their failure to bid. While we found little merit to that contention, we explained the following:

> The trial court should, of course, exercise extreme caution in considering upset bids received from persons who were present and participated in the bidding at the previous sale, with a view toward preventing any abuse of the practice of receiving upset bids, or in any way delaying the progress of the litigation.

*Id.*

We also addressed the issue of the court's discretion in deciding to confirm a sale or accept an upset bid. We explained in *Hatfield* that a bid does not become a binding contract until it is confirmed by the court. Until such confirmation, the right of the purchaser is inchoate, and the bid is subject to rejection.

> That is the stage at which the court may open anew the bidding upon an advanced offer, substantial and made in good faith. But even at this stage it is always discretionary with a court whether it will confirm a sale, though made and complied with in all respects as required by its decree, or set it aside and direct a resale. Whether a court will confirm must de-

2. The $138,000 bid of January 22, 1990, had never been acted upon. It had been made con-tingent upon the potential purchasers' sale of their own home.

pend in great measure on the circumstances in each case....

*Hatfield,* 136 W.Va. at 348, 67 S.E.2d at 532.

In *Hendricks,* we addressed an upset bid filed subsequent to the initial bid at a judicial sale for a farm owned by an incompetent person. We reiterated our holding in *Hatfield* and explained that upset bids may be refused in the sound discretion of the trial court. *Hendricks,* 181 W.Va. at 542, 383 S.E.2d at 507. In *Hendricks,* the lower court had had refused to consider the upset bid of a potential purchaser who was present at a hearing at which the court fixed the terms of a sale to another individual. *Id.*

■ Although the Appellant in the present case concedes that the judicial sale was properly conducted, she asserts that the $65,000 bid was so grossly inadequate that the sale should be vacated. The $65,000 bid by the Appellees at the sale represents 48% of the alleged $136,500 valuation of the home. As we referenced above, judicial sales at 50% or less of the actual or appraised value have been upheld. *Koay,* 178 W.Va. at 283, 359 S.E.2d at 116. Other jurisdictions have adopted a similar approach to this issue. In *Martin v. Martin,* 415 So.2d 1120 (Ala.Civ.App.1982), for instance, a partition sale of a marital home was confirmed even though the wife's bid of $15,600 was only 48% of a previous purchase price of $32,500. In *Dougherty v. McKeever,* 502 S.W.2d 430 (Mo.App. 1973), a $5,000 bid was upheld despite the home's alleged worth of $15,000 to $20,000. The *Dougherty* court explained the relationship between the bid price and the alleged value did not demonstrate "a shocking inadequacy of price." *Id.* at 432.

This Court ordered rejection of a bid in *Tudor v. Tudor,* 171 W.Va. 135, 298 S.E.2d 108 (1982), where a successful bid represented less than 15% of the appraised value of the property. In the syllabus of *Tudor,* we explained as follows:

"A sale of real estate by a trustee will not be set aside upon the ground of inadequacy of price unless such inadequacy is so great as to shock the con-

science of the chancellor...." Syllabus point 9, in part, *Pence v. Jamison,* 80 W.Va. 761, 94 S.E. 383 (1917). Syllabus point 3, in part, *Rife v. Woolfolk,* [169] W.Va. [660], 289 S.E.2d 220 (1982).

In discussing that general rule, we specified that the "rule applies with equal force to a hearing on the confirmation of a judicial sale." 171 W.Va. at 136 n. 2, 298 S.E.2d at 109 n. 2.

The Appellant's contention of inadequacy of the sale price is slightly weakened by her failure to bid at the judicial sale despite her presence there. The judicial sale was not forced upon the Appellant; she agreed to it and was present with her counsel during the sale. As we explained above, this Court has consistently held that a lower court's decision regarding confirmation of a sale upon the filing of an upset bid depends upon the circumstances of each individual case and lower courts have traditionally been afforded broad discretion in this determination. We find that the lower court did not abuse its discretion in determining that the $65,000 price was not shocking to the conscience. The Appellant's upset bid of $75,000, representing only a 15% increase over the $65,000 bid by the Appellees, was not substantially greater than the Appellees' initial bid. That recognition, coupled with the Appellant's inaction at the sale and approximate two and one-half months delay in submitting an upset bid only 15% higher than the original bid, clearly justified the lower court's exercise of discretion to accept the original $65,000 bid. While the Appellant's failure to bid at the judicial sale would not provide us with the sole basis for affirming this matter, it is certainly an issue properly within the consideration of the trial court. We conclude that the lower court committed no reversible error in confirming the $65,000 sale price and in rejecting the Appellant's upset bid. Accordingly, we affirm the decision of the Circuit Court of Berkeley County.

Affirmed.